WUPW TV–36, Appellee,

v.

DIRECT RESULTS MARKETING, INC., Appellant;

Thermal–Lok Corporation, Appellee.

[Cite as *WUPW TV–36 v. Direct Results Marketing, Inc.* (1990), 70 Ohio App.3d 710.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–442.

Decided Dec. 20, 1990.

*Luper, Wolinetz, Sheriff & Neidenthal, Mark J. Sheriff* and *Nodine Miller*, for appellee WUPW TV–36.

*Burman & Robinson* and *Robert N. Burman*, for appellant.

BOWMAN, Judge.

In the fall of 1985, appellee, WUPW TV–36 ("TV–36"), began operating in Toledo, Ohio. Later that year, appellant, Direct Results Marketing, Inc. ("DRM"), contacted TV–36 about placing advertising for Thermal Guard of Ohio, Inc., also known as Thermal–Lok ("the advertiser"), on TV–36. After TV–36 agreed to air the advertiser's advertising, it put together an advertising schedule and, when the schedule was complete, TV–36 implemented a traffic order which was verbally confirmed with DRM. After the traffic order

was accepted by DRM and inputted into the system by TV–36, a confirmation/contract was written which confirmed the times purchased by DRM for the advertiser. A copy of this contract was sent to DRM. DRM audited the confirmation/contract to ensure that the spots had aired on TV–36 and then sent a copy of the confirmation/contract, and the charges for the spots, to the advertiser, showing the amount owed for the advertising. Thereafter, the advertiser would pay DRM for the advertising. DRM would take this amount, deduct its commission, and then DRM would make payment for the advertising to TV–36.

In 1988, the advertiser began experiencing financial difficulties and, as a result, TV–36 was not paid for the advertising which DRM placed with the station. TV–36 contacted DRM about the lateness in payment on the account and, in an effort to assist the advertiser, DRM applied its commissions to the account; however, the account remained unpaid. As a result, on May 17, 1989, TV–36 filed a complaint against DRM demanding judgment in the amount of $5,101.73 for the unpaid account.

On July 31, 1989, TV–36 filed an amended complaint against both the advertiser and DRM alleging that they both owed TV–36 for the account in the amount of $5,101.73. Both DRM and the advertiser answered the amended complaint. Thereafter, DRM filed and served upon TV–36 interrogatories, request for admissions, and a request for the production of documents. On October 17, 1989, judgment was granted in favor of TV–36 against the advertiser in the amount of $5,101.73. Trial commenced on TV–36's complaint against DRM in March 1990. After a two-day trial, the trial court entered judgment for TV–36 against DRM for $4,745.80, plus ten percent interest from August 10, 1988 and costs. DRM now brings this appeal and asserts the following assignments of error:

*"Assignment of Error No. 1*

"That the judgment of the court granting judgment in favor of plaintiff and against defendant was against the manifest weight of the evidence.

*"Assignment of Error No. 2*

"That the court errored [*sic*] in admitting plaintiff's statement of account without requiring compliance with Ohio Rules of Evidence, Rule 803(6).

*"Assignment of Error No. 3*

"In granting judgment in favor of plaintiff and against defendant, the court errored [*sic*] in not considering the facts admitted by plaintiff in defendant's request for admissions previously filed in the action.

*"Assignment of Error No. 4*

"That the court errored [*sic*] in overruling defendant's objections to evidence which plaintiff was attempting to introduce and sustaining plaintiff's objections to evidence which the defendant was attempting to admit, all to the prejudice of defendant.

*"Assignment of Error No. 5*

"That the court errored [*sic*] in imposing liability upon an agent for the acts of a disclosed principal.

*"Assignment of Error No. 6*

"That the court errored [*sic*] in finding an agreement between plaintiff and defendant ('DRM') that would make DRM liable for payment of Thermal–Lok's account and in doing so the court erroneously made DRM a guarantor of Thermal–Lok's account with plaintiff."

In its second assignment of error, DRM asserts that the trial court erred in admitting TV–36's Exhibit A, statement of account. DRM asserts that the document is hearsay, pursuant to Evid.R. 802, and does not qualify for admission under any of the exceptions to the hearsay rule. DRM asserts that the document does not qualify for admission under the business record exception to the hearsay rule, Evid.R. 803(6), because it is not a complete accounting of the advertiser's account, since it does not contain a running balance from the beginning of the account but, instead, lists only the charges and credits on the account beginning with October 18, 1987.

The decision to admit a business record into evidence, pursuant to Evid.R. 803(6), rests within the sound discretion of the trial court and such a determination will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Cleveland v. Huff* (1984), 14 Ohio App.3d 207, 14 OBR 235, 470 N.E.2d 934. See, also, *National City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 2 OBR 57, 440 N.E.2d 590. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Beacon Journal Pub. Co. v. Stow* (1986), 25 Ohio St.3d 347, 25 OBR 399, 496 N.E.2d 908.

Evid.R. 803(6) provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

" * * * A * * * record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * record, or data compilation, all as shown by the testimony of the

custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  * * * "

R.C. 2317.40 permits authentication of a business record and provides:

"A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or *under whose supervision such record was made* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." (Emphasis added.)

This court finds that there was sufficient evidence adduced to authenticate the statement of account so as to render it admissible under Evid.R. 803(6) and R.C. 2317.40, to the extent it remains applicable under the business record exception to the hearsay rule, and the trial court did not abuse its discretion in admitting plaintiff's Exhibit A, the statement of account, into evidence.

■ DRM also asserts that Exhibit A was improperly admitted into evidence because it was an incomplete record which did not contain a running balance of the account since its inception, but only listed charges and credits from October 18, 1987. DRM asserts that, in order to be a proper account, it must be a complete record of the account since its inception.

In *Brown v. Columbus Stamping & Mfg. Co.* (1967), 9 Ohio App.2d 123, 126, 38 O.O.2d 143, 145, 223 N.E.2d 373, 375, the court discussed the basic structure of an account and stated:

"An account must show the name of the party charged. It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due.

"A copy of a ledger sheet, or an accounts receivable record, will ordinarily meet the requirements of an account. * * * " See, also, *American Security Service v. Baumann* (1972), 32 Ohio App.2d 237, 61 O.O.2d 256, 289 N.E.2d 373.

From the foregoing, it is evident that an account need not begin with a zero balance, although that may be preferable; however, all that is necessary for a document to qualify as an account is a summary showing a running or developing balance. In this case, the testimony indicated that, prior to

October 18, 1987, the balance on the account was current. It was only after October 18, 1987 that a problem began with payment on the account. Therefore, this court finds that it was proper to admit as evidence only that portion of the account with which there was a dispute and which remained unpaid.

Lastly, DRM asserts that Exhibit A is inadmissible because it was not properly authenticated. DRM asserts that Larry Blum, the President and General Manager of TV–36, was not capable of authenticating the document because he is not the individual who oversaw or controlled the keeping of TV–36's books and records. With respect to authentication or identification of documents, Evid.R. 803(6) first refers to the testimony of the custodian or other qualified witness, and then refers to Evid.R. 901(B)(10), which with respect to authentication or identification of evidence allows " * * * [a]ny method of authentication or identification provided by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio or by other rules prescribed by the Supreme Court."

In *State v. Vrona* (1988), 47 Ohio App.3d 145, 547 N.E.2d 1189, the court determined that, under the business record exception to the hearsay rule, the witness providing the foundation for the document need not have firsthand knowledge of the transaction. Rather, the witness must demonstrate that he is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with Evid.R. 803(6).

In *Hardesty v. Corrova* (1986), 27 Ohio App.3d 332, 27 OBR 389, 501 N.E.2d 81, this court noted that, in order to authenticate an account record, it is not necessary to present the testimony of the person who made the actual postings. A person is a competent witness to authenticate an account record if the record was prepared under his supervision and control, and if he is sufficiently knowledgeable about the procedure for the account, and what the account means.

In this case, Blum testified that he was the President and General Manager of TV–36 and that his duties and responsibilities involved supervising the entire operation of the television station, including supervising all accounting functions. Blum testified to the specific procedures involved when an entity, whether it was an advertising agency or an advertiser itself, wanted to place advertising on his TV station. His testimony demonstrated that he was knowledgeable of the entire process of placing advertising on TV–36, from the first contact, to the traffic order, to the checking of the entity's credit, to the generation of the confirmation/contract and statement of account, to the

billing procedure, to dealing with an advertising agency with respect to an advertiser it represents, to the length of time that bills are invoiced and paid, to dealing with any discrepancies with regard to the confirmation/contract and statement of account. Further, Blum's testimony indicated that he was familiar with and aware of the problems involved with DRM and the advertiser's account and that, although he did not personally oversee the posting of the television spots or the invoicing for the advertising, he did specifically supervise the controller who was in charge of these areas. He also testified that the account was prepared under his supervision and control.

Based on the foregoing, this court finds that Blum was an appropriate witness to authenticate the statement of account since the document was prepared under his supervision and control. Further, this court finds that Exhibit A was properly admitted into evidence and that it was a proper statement of account. Accordingly, DRM's second assignment of error is not well taken.

In its third assignment of error, DRM asserts that the court erred in not considering the facts admitted by TV–36 in DRM's request for admissions which was filed on August 14, 1989. DRM asserts that, because TV–36 failed to provide answers to its request for admissions, the matters set forth in the request for admissions are deemed to be admitted pursuant to Civ.R. 36.

Civ.R. 36 sets forth the procedure whereby a party may serve upon any other party a written request for the admission of the truth of any matter that relates to statements or opinions of fact or of the application of law to fact, including the genuineness of any document described in the request. The party on whom the request for admissions has been served must answer the request in not less than twenty-eight days after service or the matter is deemed admitted.

In this case, DRM asserts that TV–36 did not answer its request for admissions and, therefore, all of the matters in its request are deemed admitted. However, the record reveals that, although TV–36's responses are not in the record, the trial transcript shows that TV–36 did answer DRM's request for admissions, as well as its set of interrogatories, but that neither TV–36 nor DRM filed the answers with the court.

Civ.R. 5(D) provides:

" * * * All papers, after the complaint, required to be served upon a party shall be filed with the court within three days after service, *but* depositions upon oral examination, interrogatories, requests for documents, *requests for admission,* and answers and responses thereto *shall not be filed unless on*

*order of the court or for use as evidence or for consideration of a motion in the proceeding. * * * "* (Emphasis added.)

Thus, unless the request for admissions and the answers and responses thereto are to be used as evidence for consideration in the proceeding, they do not need to be filed. Therefore, had DRM wished the court to consider TV–36's responses to its request for admissions, it was DRM's responsibility to file these with the court. Because it failed to file the responses, it was impossible for the court to consider them and, as such, the court did not err in not considering them. Accordingly, DRM's third assignment of error is not well taken.

In its fourth assignment of error, DRM asserts that the court erred in overruling its objections to TV–36's evidence, which this court addressed in DRM's second assignment of error, and in sustaining TV–36's objections to DRM's evidence. DRM asserts that all of these rulings were erroneous and prejudiced it.

Specifically, DRM asserts that the court erred in excluding its evidence relating to the overall profit structure of DRM. The trial court found that this evidence was irrelevant since DRM's purpose in proffering the evidence was to show that no advertising agency would enter into the agreement contained on the back of the confirmation/contract because it would prevent the advertising agency from making a profit. DRM asserts that this information was relevant because it forms a foundation to understand why DRM entered into a different agreement with Chuck Buckenmaier, the Sales Manager of TV–36 in 1985. DRM asserts that Maclennan Logan, the President and sole shareholder of DRM, entered into an oral agreement with Buckenmaier wherein they agreed that DRM would not accept financial responsibility for the advertiser's account and that the bills for the television time would be the direct responsibility of DRM's client.

■■■ Evid.R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

If the evidence is not relevant, then it is not admissible. Evid.R. 402. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343.

■■■ This court cannot find that the trial court abused its discretion in ruling that DRM's evidence regarding its overall profit structure was irrelevant in this case. The issue for the trial court was whether or not TV–36 and

DRM entered into a contract which made DRM liable for the cost of the advertising it placed on TV–36 for its advertiser. Whether or not DRM would have made any profit as a result of this contract, or whether or not it was a prudent business decision, was not at issue. Further, the evidence regarding DRM's profit structure did not have the tendency to make the existence of any fact about the contract more probable or less probable than it would have been had the evidence been excluded, as it was. Thus, this court finds that the trial court properly found that this evidence was irrelevant and, therefore, not admissible. Accordingly, appellant's fourth assignment of error is not well taken.

Appellant's first, fifth and sixth assignments of error are related and will be considered together. In these assignments of error, DRM asserts that the trial court erred in finding that it was liable for the payment of its advertiser's account when it disclosed to TV–36 that it was acting as an agent on behalf of its advertiser. DRM further asserts that the trial court's decision is against the manifest weight of the evidence because the evidence showed that DRM had entered into an agreement with TV–36's previous general manager which precluded it from being liable for its advertiser's account.

DRM asserts that it is not liable for this account because it had entered into an agreement with Buckenmaier which provided that the advertiser, and not DRM, was liable for the cost of all of the advertising being placed with TV–36. Furthermore, DRM was a disclosed agent acting on behalf of the advertiser and, in conformity with agency principles, it cannot be held liable for the account because an agent who contracts with a third-party on behalf of a disclosed principal, and is the authorized agent of the principal, is not personally liable on the contract. DRM also asserts that the television contract conditions are not binding on it because neither TV–36 nor DRM signed the confirmation/contract.

TV–36 contends that it is the custom in the industry for the television confirmation/contract not to be signed by the parties because the turn-around time waiting for contracts to be signed and mailed to the different parties would preclude the advertiser's spots from airing when the advertiser requested them to be aired. TV–36 also asserts that it did not enter into an agreement with DRM other than the agreement contained in the confirmation/contract, and that there is nothing in the record to indicate that it knew of any agreement between DRM and the advertiser as it relates to the payment of TV–36's bills. In addition, TV–36 asserts that, for five years, it sent its invoices and its statement of account to DRM, and was paid for the charges listed thereon by DRM.

The confirmation/contract at issue provides:

"The person, firm, or corporation (including, but not limited to organizations known as advertising agencies, or buying services) contracting for television time and the advertiser for whom the advertising is being placed (hereinafter called AGENCY) and the station accepting this contract (hereinafter called STATION) hereby agree that this contract shall be governed by the following conditions:

"1. *PAYMENT AND BILLING*

"(a) STATION will bill AGENCY monthly * * * *unless otherwise provided on the face of this contract.*
"* * * *

"(c) Payment by AGENCY of items which are not in dispute * * * on each invoice is due within 15 days after receipt of invoice by AGENCY. * * *

"(d) *STATION agrees to hold AGENCY solely liable for payments to be made under this contract* provided however that if AGENCY fails to pay non-discrepant portions of any invoice rendered in compliance with the provisions of this contract within 5 weeks after the end of the month for which the invoice was rendered STATION may elect to notify AGENCY and Advertiser in writing of such non-payment. * * *

"(1) AGENCY shall remain solely liable to STATION for payment of all invoices in respect of which payment has been made to AGENCY by Advertiser prior to receipt of the notice and

"(2) Advertiser shall be solely liable to STATION for payment in respect of which payment was not made to AGENCY by Advertiser prior to receipt of the notice

"(3) Advertiser shall be liable to STATION for payment made to AGENCY upon Advertiser knowing that AGENCY had entered into an agreement purporting to assign or pledge to a third party monies which may be, or become, payable by Advertiser to AGENCY." (Emphasis added.)

When reviewing a trial court's decision to determine whether it is against the manifest weight of the evidence, a court of appeals is guided by the presumption that the findings of the trial court are correct. The rationale for the presumption is that the trial court is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Thus, the rule for review is:

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co., supra,* at 80, 10 OBR at 411, 461 N.E.2d at 1276.

This court finds that the trial court's decision in this case is supported by competent, credible evidence and, therefore, is not against the manifest weight of the evidence. The confirmation/contract specifically provides that the agency, DRM, is liable for payment of the account. Although there was conflicting testimony as to whether or not the parties entered into an agreement different from the terms on the confirmation/contract, neither DRM nor TV–36 presented any evidence from Buckenmaier to support either side's position. Because of the conflicting testimony regarding whether the terms of the contract were altered, the trial court was in the best position to resolve the issue by viewing the evidence and judging the witnesses and their credibility. Although DRM asserts that, under principal and agency concepts, it cannot be held liable for the account of its advertiser since it was a disclosed agent of a principal, *i.e.*, the advertiser, DRM presented no affidavit or other evidence from the advertiser which showed that there was an agency/principal relationship. Further, the fact that there was an agency/principal relationship cannot alter the terms of the confirmation/contract which the trial court found that DRM entered into with TV–36.

There was evidence of a custom or usage in the industry to show that contracts of this sort were generally not signed by the parties involved, and that the course of conduct which occurred between the parties was also the custom in the industry. This court finds that DRM cannot now bypass an established industry custom that television stations hold advertising agencies liable for the purchase of air time unless the television station receives specific notice of nonliability, even though the television station is aware that the advertising agency is acting for a disclosed principal. Further, although TV–36 knew at all times who the advertiser was, its contract was with DRM, and DRM acted consistent with the contract. TV–36 invoiced DRM, DRM paid TV–36, and TV–36 contacted DRM when the account was delinquent. Thus, this court finds that the trial court's verdict was not against the manifest weight of the evidence. Accordingly, appellant's first, fifth and sixth assignments of error are not well taken.

For the foregoing reasons, appellant's six assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and HENDERSON, J., concur.

JOHN W. HENDERSON, J., of the Clark County Court of Common Pleas, sitting by assignment.