SOBERAY MACHINE & EQUIPMENT
COMPANY, Plaintiff–Appellant (96–
3946; 97–3308), Cross–Appellee,

v.

MRF LIMITED, INC., Defendant–
Appellee/Cross–Appellant (96–
3997),

Nos. 96–3946, 96–3997 and 97–3308.

United States Court of Appeals,
Sixth Circuit.

Argued April 30, 1998.

Decided June 16, 1999.

Rehearing Denied July 7, 1999.

760

John A. Hallbauer (argued and briefed), Brian J. Green, William E. Armstrong (briefed), Buckley, King & Bluso, Cleveland, Ohio, for Plaintiff–Appellant/Cross–Appellee.

Matthew T. Fitzsimmons (argued and briefed), Thomas A. Gattozzi (briefed), Nicola, Gudbranson & Cooper, Cleveland, Ohio, for Defendant–Appellee/Cross–Appellant..

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

CLAY, J., delivered the opinion of the court, in which DAVID A. NELSON, J., joined. BOGGS, J. (pp. 772–74), delivered a separate dissenting opinion.

## OPINION

CLAY, Circuit Judge.

This is a consolidated appeal. In case No. 96–3946, Plaintiff, Soberay Machine & Equipment Company, appeals from the judgment entered by the district court enforcing the jury trial verdict in favor of Defendant, MRF Limited, Inc., in this diversity action seeking money damages for an alleged breach of contract. In case No. 97–3308, Plaintiff appeals from the district court's order denying Plaintiff's motion to review the clerk's taxation of costs in the amount of $20,507.50. In case No. 96–3997, Defendant cross-appeals from the district court's judgment that disposed of all claims with respect to all parties, and which thereby implicitly denied Defendant's previous motion to dismiss for lack of subject matter jurisdiction or alternatively for failure to join an indispensable party.

For the reasons set forth herein, in case No. 96–3997 we **REVERSE** the district court's judgment on Defendant's cross-appeal, thereby rendering Plaintiff's appeal in case No. 96–3946 **MOOT**; in case No. 97–3308, we **AFFIRM IN PART, REVERSE IN PART, & REMAND** the district court's order denying Plaintiff's motion to review the clerk's taxation of costs.

### I.

### Procedural History

Plaintiff, an Ohio Corporation in the business of selling used machinery and equipment with its principal place of business in Ohio, filed suit in Ohio state court against International Polymer Equipment Corporation ("IPEC"), also a corporation with its principal place of business in Ohio, seeking the balance of payment owed for a piece of machinery used in the production of rubber products known as a "calender." On October 8, 1991, Plaintiff filed a complaint in federal district court against IPEC, as agent for Defendant, and against Defendant, a corporation with its principal place of business in India, seeking the balance of payment owed on the calender from IPEC and/or Defendant. About six months later, on January 13, 1995, Plaintiff filed a motion to amend its complaint in federal court on the basis of correcting its prayer for damages and dropping IPEC from the suit. The district court granted Plaintiff's motion, and on March 15, 1995, Plaintiff filed its amended complaint; however, in addition to correcting its prayer for damages and dropping IPEC from the suit, Plaintiff also alleged that IPEC, while acting as agent for Defendant, made a series of purchases from Soberay "for the delivery, shipping, and packaging of goods sold and delivered by Soberay to MRF."

Defendant filed a motion for summary judgment as well as a motion for judgment on the pleadings for lack of subject matter jurisdiction or, alternatively, for failure to join IPEC as an indispensable party. The court did not rule upon Defendant's motion at that time. The case proceeded to a jury trial, where the jury returned a verdict in favor of Defendant in the form of interrogatories and a general verdict form. On July 31, 1996, the district court entered judgment in favor of Defendant and against Plaintiff on the basis of the jury's verdict. Defendant filed a motion requesting the court to enter an order directing the clerk of court to tax costs against Plaintiff. On November 6, 1996, the clerk taxed costs against Plaintiff in the amount of $20,507.50. Plaintiff filed a motion to review the clerk's taxation of costs on November 27, 1998, which the district court denied. Plaintiff and Defendant filed their respective notices of appeal and cross-appeal.

### Facts

In December of 1988, Defendant sent Plaintiff a telex inquiring about the availability of a second-hand calender. Plaintiff responded by telex briefly describing two calenders. Defendant notified other equipment suppliers, including IPEC, of its need for a calender. Chris Dias, Defendant's Director of Engineering, was the person in charge of this specific calender purchase. Dias claimed that he never had any dealings with Plaintiff in his efforts to purchase a calender. K. George, Defendant's top production manager, came from India to Plaintiff's office and looked at the calender. On August 25, 1989, Plaintiff sent George a quote for the purchase price of the calender.

IPEC responded to Defendant's inquiry, and sent Defendant several invoices for the purchase of a calender. Defendant entered into negotiations with IPEC for the calender, and subsequently purchased a used calender from IPEC. Before the purchase was complete, several documents

passed between IPEC and Defendant, such as invoices for the purchase of the calender. The invoices were signed by Ingram Myers on behalf of IPEC, indicated that Defendant was the buyer and IPEC was the seller, and stated that payment was to be made by letter of credit from Defendant to IPEC. The invoices did not state that IPEC was Defendant's agent.

After receiving the invoices from IPEC, Dias got approval from Defendant to purchase the calender. Thereafter, Defendant sent eight purchase orders, based on IPEC's invoices, to purchase the various component parts of the calender. These purchase orders stated that Defendant would pay IPEC by way of letter of credit. Defendant also opened several letters of credit so as to transmit payment to IPEC. These letters entitled the beneficiary to draw upon the funds once the goods were shipped. On all of the letters of credit, Defendant listed IPEC as the beneficiary.

Once IPEC received the letters of credit, it prepared to ship the calender. All of the bills of lading involved in the shipment of component parts of the calender referred to IPEC as the shipper/exporter and made no reference to Plaintiff. Subsequently, Plaintiff billed IPEC for the sale of the calender. Plaintiff's own invoices stated "Sold to IPEC." Defendant paid IPEC in full for the calender. Myers acknowledged that IPEC received payment in full from Defendant for the calender.

IPEC paid Plaintiff an initial installment payment of $200,000 for the calender. However, due to financial difficulties that IPEC was experiencing at the time, IPEC did not pay Plaintiff the balance of the purchase price. Plaintiff demanded payment from IPEC, to no avail. Plaintiff filed suit against IPEC in state court seeking payment of the balance owed on the calender. Thereafter Plaintiff filed the instant suit against IPEC and Defendant in federal district court. IPEC then filed a voluntary petition for bankruptcy under

chapter seven listing the balance owed to Plaintiff for the calender as a debt, and Plaintiff filed a claim against IPEC in bankruptcy court for the balance owed. Plaintiff then amended its complaint dropping IPEC from this suit.

## II.

### No. 96–3997—Cross Appeal

The district court did not specifically rule upon Defendant's motion to dismiss for lack of subject matter jurisdiction or alternatively for failure to join IPEC as an indispensable party pursuant to Fed.R.Civ.P. 19, but implicitly denied the motion in rendering the judgment in this case. Because IPEC was an indispensable party to this suit, we hold that the district court erred in denying the motion. *See Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 822 F.2d 613, 619 (6th Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988) (reviewing motion brought under Rule 19 *de novo* ).

 Defendant first argues that because Plaintiff's original complaint, filed in federal district court under 28 U.S.C. § 1332, lacked complete diversity of citizenship, inasmuch as Plaintiff named IPEC—a nondiverse party—as a defendant, the district court lacked subject matter jurisdiction over the complaint and should have dismissed the case pursuant to Fed.R.Civ.P. 12(b)(7). Defendant claims that Plaintiff did not cure this jurisdictional defect by amending its complaint and dropping IPEC from the suit because jurisdiction is determined at the time the case is initially commenced and may not be created by dropping an indispensable party. Although we agree that a party may not create diversity by dropping a nondiverse and indispensable party, we note that it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity. *See Safeco Ins. Co. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir.1994); *Reed v. Robilio*, 376 F.2d 392, 394 (6th Cir.1967); *Grant County Deposit Bank v. McCampbell*, 194 F.2d 469, 473 (6th Cir.1952). As this Court stated in *Safeco*:

> Rule 21 of the Federal Rules of Civil Procedure permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19, that is, the party to be dropped must not be a necessary party. It is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.

36 F.3d at 545 (citations, footnotes, and internal quotation marks omitted). Furthermore, it makes no difference whether Rule 15 or Rule 21 is used to retain federal diversity jurisdiction over a case.[1] *Id.* (citing 7 Charles A. Wright, et al., Federal Practice and Procedure § 1685 at 458 (2d ed.1986)).

 Therefore, the issue becomes whether IPEC should have been joined as an indispensable party to the litigation under Federal Rule of Civil Procedure 19. The first step in determining the question of joinder under Rule 19 is whether a

---

1. Fed.R.Civ.P. 15(a) provides in pertinent part:

 A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.
 Fed.R.Civ.P. 21 provides:

 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be served and proceeded with separately.

person is necessary to the action and should be joined if possible. This step is governed by the procedure set forth in Rule 19(a) as follows:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. (19)(a). If a person is found to meet one of the criteria set forth in 19(a), the person is to be joined if feasible and the issue of whether the court may exercise personal jurisdiction over the person arises. If personal jurisdiction is present, the person shall be joined. However, in the absence of personal jurisdiction, or if venue as to the person is improper, the court must proceed to the third step which involves an analysis under 19(b)' to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable." Fed.R.Civ.P. 19(b). An analysis under 19(b) requires consideration of four factors: 1) to what extent a judgment rendered in the person's absence might prejudice the person or those already parties; 2) the extent to which the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *See id.*

Here, under Rule 19(a)(1), IPEC was a necessary party inasmuch as complete relief could not have been afforded to those already parties to the suit in IPEC's absence. For example, the actual outcome of this suit was such that Plaintiff did not obtain the relief sought and, had the outcome been different, Defendant—an Indian corporation—would have been required to seek relief against IPEC. *See Keweenaw Bay Indian Community v. Michigan,* 11 F.3d 1341, 1346 (6th Cir.1993). In fact, Plaintiff originally filed suit against IPEC in state court and originally named IPEC in the suit filed in federal district court. Although this Court has found that "Rule 19(a)(1) focuses 'on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person[,]'" *Sales v. Marshall,* 873 F.2d 115, 121 (6th Cir.1989) (quoting *LLC Corp. v. Pension Benefit Guaranty Corp.,* 703 F.2d 301, 305 (8th Cir.1983)), the likelihood that either party would have sought further legal recourse in this case is not speculative inasmuch as IPEC was a signatory to the contract for which Plaintiff seeks remuneration, and for which Defendant had already paid IPEC in full. *See Keweenaw,* 11 F.3d at 1346–47 (finding that the prospect of subsequent litigation between the absentee parties and those already parties to the suit was not speculative because the absentee parties were signatories to the treaty that was at issue).

Having found IPEC was a necessary party to the litigation who could not have been joined without destroying diversity—inasmuch as IPEC and Plaintiff are both corporations whose principal place of business is in Ohio—the next step is an analysis under the four factors set forth in 19(b) to determine whether "in equity and good conscience" the action should have proceeded without IPEC. Under the first factor, to what extent a judgment rendered in the party's absence might be prejudicial to the party or to those already parties, Defendant argues that it was prejudiced by

IPEC's absence because IPEC was the real party in interest here. Defendant claims that inasmuch as it paid IPEC in full for the cost of the calender it should not have been required to pay Plaintiff the $149,610 balance which IPEC subsequently failed to pay Plaintiff, particularly where the evidence indicated that Plaintiff and IPEC were acting under a separate agreement to which Defendant was not a party. Plaintiff argues that because IPEC acted as Defendant's agent, IPEC could not be considered an indispensable party under 19(b). We agree with Defendant that to have proceeded with the case in IPEC's absence prejudiced Defendant because IPEC was the real party in interest inasmuch as IPEC contracted with Plaintiff for the sale of the calender.

■ At the outset, we disagree with Plaintiff's contention that a party acting as an agent for a principal may never be considered an indispensable party for purposes of Rule 19(b). The cases relied upon by Plaintiff in support of this contention do not so hold and are distinguishable. For example, one of the cases relied upon by Plaintiff, *Cass v. Sonnenblick–Goldman Corp.*, 287 F.Supp. 815, 818 (E.D.Pa.1968), recognized that "[e]ven though a principal and his agent are both involved in allegedly wrongful acts, they both are not necessarily indispensable parties to an action arising out of those acts." However, the court did not simply base its holding upon this proposition, but held that *under the facts of the case before it*, the agent was not an indispensable party. In other words, *Cass* did not hold that an agent may never be considered an indispensable party; but rather, that the facts of a case must be examined before making this determination. In fact, the court in *Cass* recognized long held Supreme Court precedent stating that there is no prescribed formula for determining whether a party is indispensable, *see id.* (quoting *Niles–Bement–Pond Co. v. Iron Moulders' Union*, 254 U.S. 77, 80, 41 S.Ct. 39, 65 L.Ed. 145 (1920)); and abundant case law supports

the proposition that the rule is to be applied on a case by case basis. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118–19, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (finding that "[t]he decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests"); *see also Keweenaw*, 11 F.3d at 1346 (finding that "rule [19] is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case").

Furthermore, the facts of *Cass* are distinguishable from the instant case. *Cass* arose out of an alleged breach of contract which was entered into by the plaintiff and other business associates, and Sonnenblick. 287 F.Supp. at 818. Under the contract, Sonnenblick agreed to procure a mortgage loan from Prudential Insurance Company of America—also named as a party defendant—for property owned by the plaintiff, and the plaintiff agreed to give Sonnenblick a $3,000 deposit. *Id.* Ralph Obedin, who at all times acted as an agent for and on behalf of his employer Sonnenblick, was also named as a party defendant by the plaintiff; however, Obedin was a citizen of the same state as the plaintiff. *Id.* at 816–18. The plaintiff alleged that after Sonnenblick failed to procure the mortgage, Sonnenblick and Prudential wrongfully refused to return the $3,000 deposit, and instead deposited the money in Sonnenblick's bank account. *Id.* The plaintiff's requested relief was directed at Sonnenblick and Prudential in that he "requested the Court to declare the defendants [Sonnenblick and Prudential] trustees *ex maleficio* of these funds and to grant him damages resulting from the alleged breach of contract and the alleged fraudulent conversion." *Id.*

Sonnenblick and Prudential argued that the lack of diversity of citizenship between

the plaintiff and Obedin was fatal to the entire action. *Cass,* 287 F.Supp. at 817. The district court found that the action could proceed without Obedin inasmuch as Obedin was not an indispensable party; however, the court noted that it was specifically so holding not simply because Obedin acted as. agent for his employer Sonnenblick, but because of Obedin's limited role as the agent as well as other factors, such as the plaintiff's prayer for relief which was directed at Sonnenblick and Prudential. *Id.* at 818.

Unlike Obedin, IPEC entered into a contract with Plaintiff to procure a calender which IPEC then sold to Defendant under a separate agreement. IPEC's role in this case is more analogous to Sonnenblick's role in *Cass* than that of Obedin inasmuch as IPEC was not employed by Defendant, acted independently in entering into the contract with Plaintiff, and acted independently in breaching the contract by failing to pay Plaintiff the full amount owed. Furthermore, although Plaintiff's prayer for relief in the amended complaint sought money damages solely from Defendant, the record indicates that Plaintiff's original complaint sought money damages from Defendant *and* IPEC; that Plaintiff originally sued IPEC in state court for the balance owing on the calender; that IPEC listed Plaintiff as one of its creditors in its chapter seven bankruptcy petition based on the amount that it owed Plaintiff for the calender; that Plaintiff filed a proof of claim against IPEC in bankruptcy court; and that the reason that IPEC filed bankruptcy was because of the lawsuit that Plaintiff filed against it in state court. Accordingly, the facts of the instant case are distinguishable from *Cass,* particularly where IPEC's role in this case was more analogous to a party defendant in *Cass*—Sonnenblick—which was sued for money damages.

Similarly, *Milligan v. Anderson,* 522 F.2d 1202 (10th Cir.1975), another case relied upon by Plaintiff in support of its contention that agents may never be considered indispensable parties, is distinguishable from the instant case. There, the Court of Appeals for the Tenth Circuit found that *generally* agents were not considered indispensable parties, but went on to engage in a factual analysis as to why that general proposition held true in that case. *Id.* at 1205. In finding that the agent in that case was not an indispensable party, the court specifically noted that the contract which the plaintiffs sought to rescind was not between the plaintiffs and the agent; but rather, was between the plaintiffs and the other named defendants and that the agent had no personal interest in the contract. *Id.* The court also found that the checks which the plaintiffs had been paying the defendants on the contract, although delivered to the agent, were made out to the defendants and cashed by the defendants who received the proceeds therefrom. *Id.* Here, however, the contract for the sale of the calender was between Plaintiff and IPEC who, under a separate agreement, then shipped and sold the calender to Defendant. In addition, IPEC paid Plaintiff for the sale of the calender—albeit not in full—and Plaintiff received the monies therefrom. Unlike in *Milligan,* IPEC had a definite personal interest in the contract with Plaintiff.

Finally, the other cases relied upon by Plaintiff are equally distinguishable for similar reasons. For example, in *City of Harrisburg v. International Surplus Lines Ins. Co.,* 596 F.Supp. 954, 956–57 (M.D.Pa.1984), *aff'd,* 770 F.2d 1067 (3d Cir. 1985) (table), the nondiverse party merely sold the insurance contract at issue to which the plaintiff and the defendant were the real parties in interest, and no independent basis of liability was asserted against the nondiverse party. Accordingly, the court found the nondiverse party was acting as the defendant's agent, was dispensable, and dismissed it from suit to maintain diversity because "complete relief as between the remaining parties would be available." *Id.* at 957. Likewise, in *Nash*

*v. Hall*, 436 F.Supp. 633, 634 (W.D.Okla. 1977), the district court found that the nondiverse party could be dropped from suit to maintain diversity where the nondiverse party was acting in his capacity as employee and agent for one of the defendants when the accident in question occurred and, as such, "a judgment against the other Defendants could be obtained for the negligent acts of [the nondiverse party]."

Here, however, as stated, IPEC was acting under a separate agreement with Plaintiff and had an independent basis of liability. IPEC's role in this action was more that of an independent contractor than an agent, although this distinction is not in and of itself outcome determinative in that a factual analysis of IPEC's role must still be made.[2] *See Tanksley & Assocs. v. Willard Indus., Inc.*, 961 F.Supp. 203, 207 n. 3 (S.D.Ohio 1997) (quoting RESTATEMENT (SECOND) OF AGENCY §§ 2, 14N cmt. a. (1957) (noting that under the Restatement (Second) of Agency, which Ohio has adopted, an independent contractor may also be an agent)); *Hensley v. New Albany Co. Ohio*, No. 97APE02–189, 1997 WL 798776, at *4 (Ohio App. Dec. 31, 1997) (finding that under RESTATEMENT (SECOND) OF AGENCY § 14N cmt. b. (1958) (emphasis added), a party "who contracts *to accomplish something for another or to deliver something to another*, but who is not acting as a fiduciary for the other, is a non-agent contractor. He may be anyone who has made a contract and who is not an agent.").

Furthermore, under Ohio's disclosed principal doctrine, even if IPEC was functioning as Defendant's agent, Defendant was prejudiced by IPEC's absence in this litigation because the facts indicate that Plaintiff elected to contract with and hold IPEC liable on the contract, not Defendant. *See Brown v. North Am. Energy*

*Programs, Inc.*, No. 46749, 1983 WL 2772, at *2 (Ohio App. Nov. 17, 1983) (citing *Depositors Savings & Loan v. Gross*, 6 Ohio Law Abs. 606 (1928)) (finding that "where a third party contracts with an agent alone, the party cannot maintain an action against the agent's principal. Even if the agent's principal is disclosed, if the agent does not enter into the contract as agent, but as the sole contracting party, the principal is not bound."); 3 OHIO JUR.3d *Agency* § 134 (1978) (recognizing that "the real parties to a simple contract should be determined from the intention of the parties as expressed by the instrument itself. If the terms of the instrument show an intention to bind the principal, the agent is not liable, since intention gathered from the terms of the instrument must control."). Along this line Ohio law has also recognized that:

> A recitation in a covenant that one is acting in the character of an agent does not of necessity control other parts of the agreement. So although at the commencement of a covenant, in describing the parties thereto, the terms 'by and between' A, 'acting as agent for … of the one part,' are used, if throughout the whole covenant all the stipulations are personal to A, and on his part personal to the other contracting party, and A executes the covenant in his own individual character, and himself enters and enjoys the leased premises, he will not be permitted to say that the covenant is void, when sued thereon. The recital of his agency is inconsistent with the personal covenants, which assume for him a different character, and the reference to agency will be regarded as surplusage.

3 OHIO JUR.3d *Agency* § 134 (1978).

■ Ohio's general rule that "[a]n agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily

---

2. "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent." RESTATEMENT (SECOND) OF AGENCY § 2 (1957).

not liable on the contracts he makes" because the third party intended to deal with the principal, not the agent, *see Smith & Assoc., Inc. v. Everett,* 1 Ohio App.3d 118, 439 N.E.2d 932, 935 (Ohio App. 1981), was recognized in *Ohio State University Hospitals v. Evans,* No. 95 CA 00019, 1995 WL 614937, at *3 (Ohio App. 1995); however, the *Evans* court also noted that "there are several exceptions to this general rule of [an agent's] nonliability" in relation to a disclosed principal:

> First, an agent may be held personally liable when he has manifested an intention to bind or contract for himself. *See WUPW TV–36 v. Direct Results Marketing, Inc.* (1990), 70 Ohio App.3d 710, 591 N.E.2d 1345. Second, an agent is not protected from personal liability when the third party's motivation for entering into the contract is based solely and exclusively upon the credit of the agent. *See* 3 Ohio Jurisprudence 3d. Agency Section 136.

*Evans,* 1995 WL 614937, at *3. The *Evans* court found that the agent in that case could not be held personally liable under either exception, and specifically found that the agent could not be held personally liable under the first exception because "[t]here [was] nothing in the record which demonstrate[d] an intention on the part of the appellee [agent] to bind or contract for himself personally". *Evans,* 1995 WL 614937, at *4.

Unlike in *Evans,* we find that IPEC could be held liable under the first exception to the general rule inasmuch as· the record indicates that IPEC intended to be bound and to be held liable on the contract with Plaintiff. It is *undisputed* that when IPEC filed a voluntary petition for bankruptcy under chapter seven, it listed the balance owed to Plaintiff on the price of the calender as a debt; that IPEC did not list Defendant as a co-debtor on the debt owed to Plaintiff on the bankruptcy petition because IPEC did not consider Defendant a co-debtor; and that Plaintiff filed a claim against IPEC in bankruptcy court. These undisputed facts clearly indicate IPEC's intention to be held liable to the contract with Plaintiff. Furthermore, the fact Plaintiff filed suit against IPEC in state court seeking payment of the balance owed on the calender, after Plaintiff unsuccessfully attempted to collect the balance due from IPEC, plainly indicates that the parties (Plaintiff and IPEC) intended that IPEC be held liable on the contract for the sale of the calender.

Thus, even assuming that IPEC was acting as Defendant's agent in this case, and that Defendant was a disclosed principal, the undisputed facts indicate that IPEC falls squarely within Ohio's first exception to its general rule that agents who contract for a disclosed principal cannot be held liable on the contract, because IPEC intended to be held liable to Plaintiff for the price of the calender. *See Evans,* 1995 WL 614937, at *3–*4; *see also WUPW TV–36 v. Direct Results Mktg., Inc.,* 70 Ohio App.3d 710, 591 N.E.2d 1345, 1350–52 (Ohio App. 1990) (upholding the trial court's decision that even though the contracting party knew of the disclosed principal's existence, the agent was liable for the debt owed inasmuch as the evidence indicated that the contracting party and the agent intended to be bound to the agreement). Because the dissent fails to recognize the exceptions to Ohio's general rule, it falls short in its analysis; as a result, it reaches the wrong conclusion.[3]

---

**3.** The dissent makes the assertion that the facts upon which the majority bases its decision are not supported by the record. Of course we take issue with this assertion, and we emphasize that based upon the *undisputed* facts of this case and a thorough analysis under Ohio law, IPEC was liable on the contract to Plaintiff. Furthermore, although the dissent places particular emphasis on the jury's finding that IPEC was acting as Defendant's agent and that Defendant gave IPEC the authority to enter into a contract with Plaintiff on Defendant's behalf, this finding does nothing to prevent IPEC from being held liable to Plaintiff on the contract for the calender, where the undisputed facts indicate IPEC's intention to be held liable. Moreover,

Accordingly, because the purchase orders between IPEC and Plaintiff indicate that IPEC was purchasing the calender from Plaintiff, and subsequent "pro forma" invoices from IPEC to Defendant indicate that IPEC then sold the calender to Defendant; because Defendant was known to Plaintiff; and because Plaintiff originally sought legal action against IPEC in both state and federal courts for the balance owed on the calender, as well as filing a claim against IPEC in bankruptcy court after IPEC listed the balance of the purchase price of the calender as a debt owed to Plaintiff on IPEC's chapter seven bankruptcy petition, Plaintiff intended IPEC to be held liable on the contract for the calender, not Defendant. The record indicates that it was only after IPEC filed chapter seven bankruptcy that Plaintiff pursued legal action against Defendant alone. Therefore, IPEC is the real party in interest here, and the parties were prejudiced by IPEC's absence. *See McDonald v. South Land Co.*, 860 F.2d 1079 (6th Cir. 1988) (finding that where the nondiverse party was named as the seller and personally signed the contracts in question, the nondiverse party was the real party interest and was thus indispensable under Rule 19(b)).

Under the second factor of the 19(b) analysis, we find that the prejudice could not have been lessened or avoided. *Compare Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 822 F.2d 613, 622 (6th Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988) (finding that the prejudice of proceeding without the nondiverse party could be avoided by ordering the arbitration to be held in a different state). In addition, under the third factor, any judgment rendered in IPEC's absence would not have been adequate because, as stated, IPEC was the real party in interest. *See McDonald*, 860 F.2d 1079. The Supreme Court has interpreted the third criterion under 19(b) "to refer to [the] public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them. After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent." *Provident*, 390 U.S. at 111, 88 S.Ct. 733. However, here, *Plaintiff* is appealing the judgment enforcing the jury verdict in favor of Defendant. Therefore, efficiency concerns are in favor of Defendant. Finally, under the fourth factor, Plaintiff would have had an adequate remedy against IPEC at the time this litigation commenced. Specifically, although IPEC had filed for chapter seven bankruptcy relief after Plaintiff filed the original suit against IPEC and Defendant in federal district court, Plaintiff had also filed a claim against IPEC's bankruptcy estate for payment of the balance owed on the calender.[4] *See, e.g., State of North Carolina v. Warren*, 37 F.3d 1495 (4th Cir. 1994) (finding a debtor in bankruptcy to be an indispensable party). Although this Court has recognized that the availability of an alternate forum, standing alone, is not sufficient to find a nondiverse party indispensable under 19(b), we find that in light of our analysis under the three other factors set forth in 19(b), the fact that Plaintiff could have proceeded against IPEC via its filed claim against IPEC's estate weighs in favor of finding IPEC indispensable. *See Local 670*, 822 F.2d at 622 (citing *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 (7th Cir.1980)).

the jury's finding is not relevant to a Rule 19 analysis.

4. Once again, we note that when IPEC filed bankruptcy, it did not list Defendant as a co-debtor on the debt owed to Plaintiff because it did not consider Defendant a co-debtor. (J.A. at 691–92.)

Accordingly, we find that "in equity and good conscience" the action should not have proceeded in IPEC's absence where IPEC was an indispensable party to the action. *See* Fed. R. Civ. Pro. 19(b). Thus, the district court erred in failing to consider, and implicitly denying, Defendant's motion to dismiss this case under Rule 19. *See Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n*, 554 F.2d 1254, 1256 (3rd Cir.1977) (finding that "[w]hen the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits"); *Smith v. Smith*, 559 F.Supp. 107, 108 (S.D.Ohio 1982) (finding that "the district court has an independent obligation to determine in every instance whether its jurisdiction is proper").

### No. 96–3946—Appeal of Merits

■ In light of our holding that the district court erred in allowing this action to proceed without IPEC, Plaintiff's appeal of the district court's judgment is moot.

### No. 97–3308—Appeal of Taxation of Costs

■ At the outset, we note that Defendant claims Plaintiff waived its right to judicial review of the clerk's taxing of costs because Plaintiff failed to file its motion to review the clerk's award on a timely basis pursuant to Fed.R.Civ.P. 54(d). Specifically, Defendant claims that because Plaintiff filed its motion twenty-one days after the entry of the award, instead of the five days as required under the rule, Plaintiff waived judicial review of the award.

Under Fed.R.Civ.P. 54(d), "[o]n motion served within 5 days thereafter, the action of the clerk may be reviewed by the court." Furthermore, under Fed.R.Civ.P. 6(b), a party has the opportunity to extend this five day period if the request is made before the expiration of the period originally prescribed; or if the motion is made after the expiration of the specified period, the court can permit the act to be done where the failure to act was the result of excusable neglect.

Here, as noted by Defendant, the costs were taxed by the clerk in the amount of $20,507.50, on November 6, 1996. Because Plaintiff failed to file its Motion for Review of Action of the Clerk under Fed.R.Civ.P. 54(d) until November 27, 1996, Plaintiff's motion was not timely. Furthermore, Plaintiff failed to seek an extension of time under Fed.R.Civ.P. 6(b) to cure the untimeliness. Accordingly, Plaintiff's motion to review the costs was not filed timely, and Plaintiff failed to come forward with any evidence to support a finding of excusable neglect. However, because it has been found that an untimely motion to review under Rule 54(d) may properly be entertained, in that the time limit is not jurisdictional, and because we believe that the district court abused its discretion in taxing costs, we will address the substance of Plaintiff's motion as follows. *See Winston v. Town Heights Dev., Inc.*, 68 F.R.D. 431, 433 n. 2 (1975) (citing *Baum v. United States*, 432 F.2d 85, 86 (5th Cir.1970); 6 James Wm. Moore et al., Moore's Federal Practice ¶ 54.77[9], at 1755 (2d ed.1974)).

■ This Court reviews a district court's award of taxation of costs for an abuse of discretion. *Jones v. Continental Corp.*, 789 F.2d 1225, 1233 (6th Cir.1986). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996). "[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." Fed.R.Civ.P. 54(d). "This language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court. The exercise of such discretion is not beyond review...." *White & White, Inc. v. American Hospital Supply Corp.*, 786 F.2d 728, 730 (6th Cir.1986).

Plaintiff first argues that the costs connected with George and Dias' first trip to America from India for "trial preparation" was, in its entirety, erroneous as a matter of law, because those expenses exceeded the allowable nature of "costs." Plaintiff argues that because George and Dias were not in attendance in any court in the United States at the time, taxation of costs incurred was improper. Defendant argues that the trial court did not abuse its discretion in taxing costs for expenses incurred for trial preparation, because the court has wide latitude in awarding costs and it was necessary for these two witnesses to travel a great distance to prepare for this case.

We agree with Plaintiff that the expenses incurred by George and Dias in preparation for trial were improperly taxed as costs. The supplemental joint appendix indicates that the total costs incurred by these two witnesses for "trial preparation" was $7,945.86. (George = $4,028.40 from June 24—June 30, 1996; Dias = $3, 917.46 from June 22—July 4, 1996). Courts have found that, although fees may be taxed in favor of a corporation that prevails for the appearance of its corporate officers and directors, such costs are limited to days spent in transit, testifying or waiting to testify and not in advising counsel. *See Winston,* 68 F.R.D. at 434 (citing *American Steel Works v. Hurley Constr. Co.,* 46 F.R.D. 465, 468 (D.Minn. 1969)). Accordingly, the trial court abused its discretion in awarding costs incurred by these two corporate witnesses for trial preparation in the amount of $7,945.86. *Winston,* 68 F.R.D. at 434.

Next, Plaintiff argues that the district court abused its discretion in awarding costs in relation to expenses incurred by George and Dias for their attendance at trial, on the basis that the expenses exceeded the days actually spent in trial as well as on the basis of the so-called "100–mile rule" in that Defendant failed to seek prior court approval for these travel costs from India. We disagree.

Regarding the "100–mile rule," it has been found that,

[I]n exercising its discretion in taxing witness fees, the 100–mile rule is a proper and necessary consideration on the part of the district court. *Farmer v. Arabian American Oil,* 379 U.S. [227], 234, 85 S.Ct. [411], 415, 13 L.Ed.2d 248 [ (1964) ]. In considering whether to allow expenses for travelling in excess of 100 miles, the court should consider the length of the journey, the necessity of the testimony, and the possibility of averting the travel expense. *West Wind Africa Line v. Corpus Christi Marine Services Co.,* 834 F.2d [1232], 1237 [ (5th Cir.1988) ].

*Green Constr. Co. v. Kansas Power & Light Co.,* 153 F.R.D. 670, 680 (D.Kan. 1994). Costs incurred in relation to travel expenses for witnesses who travel beyond the 100 miles from where the trial is held need not be approved by the court in advance. *Fleet Investment Co., Inc. v. Rogers,* 620 F.2d 792, 794 (10th Cir.1980). However, "since such a request appeals to the court's discretion, parties who obtain a witness from outside the 100–mile limit without advance approval do so at their peril." *Id.*

The record indicates that George submitted costs in the amount of $4,981.13 for expenses incurred from July 13 through July 22, 1996, regarding his attendance at trial. The record further indicates that Dias incurred costs from July 10 through July 22, 1996, in the amount of $5,751.98, regarding his attendance at trial. The trial commenced on July 16, 1996, and the jury returned its verdict on July 19, 1996. Although it is true that George and Dias submitted costs for days spent prior to trial and after trial, it is also true that these witnesses were traveling from India, and therefore some allowance may have been required for the extensive time necessary to travel. *See Mastrapas v. New York Life Ins. Co.,* 93 F.R.D. 401, 405–06 (E.D.Mich.1982). Allowances for wit-

nesses are not restricted to the days the witness actually testifies, but may also be awarded for each day the witness necessarily attends trial, time spent during delays and temporary adjournments, and the time necessary for travel to and from the place of attendance. *Id.*

In this case, the district court did not abuse its discretion in awarding travel costs beyond 100 miles for George and Dias' entire stay where Defendant was forced to travel from India to Ohio to defend itself, despite its efforts to dismiss the action for lack of jurisdiction and forum non-conveniens, and where George and Dias were necessary witnesses in that they were Defendant's corporate employees. *See Green,* 153 F.R.D. at 679–80; *Mastrapas,* 93 F.R.D. at 405–06. Furthermore, we find that these costs were proper where the facts suggest that Plaintiff sued Defendant solely because IPEC was not a collectable defendant. *See White,* 786 F.2d at 731 (finding that good faith of unsuccessful litigant is a consideration in taxing costs). However, the district court abused its discretion in awarding costs associated with George and Dias' trial preparation in the amount of $7,945.86.

## CONCLUSION

For the above stated reasons, in Case No. 96–3997, we **REVERSE** the district court's judgment denying Defendant's motion to dismiss for failure to join an indispensable party, thereby rendering Plaintiff's appeal in Case No. 96–3946 **MOOT**; and **AFFIRM IN PART, REVERSE IN PART, & REMAND** to the district court for proceedings consistent with this opinion on Plaintiff's appeal of costs in Case No. 97–3308.

BOGGS, Circuit Judge, dissenting.

The facts of this case seem to be relatively straightforward, though there could be contention about the legal principles involved. The opinion of the court, however, appears to be based on a set of facts that I do not see supported either in the record in general or in the factual determination of the jury in response to a specific interrogatory, which the text of the court's opinion fails even to mention. Based on the set of facts found by the jury, it appears to me that the law is quite clear that the plaintiff, Soberay, should prevail as a matter of law. I therefore dissent from the court's decision for the defendant.

Soberay wanted to sell a very expensive and complicated piece of industrial machinery. Soberay was contacted about selling the machine directly by MRF, an Indian corporation. After extensive and very specific negotiations between the two parties, MRF introduced into the equation "Inky" Myers, the Ohio-based president of IPEC. Eventually MRF and Soberay agreed to a price for the sale of the machine, to be invoiced to IPEC. The price agreed to between Soberay and MRF would have a five percent commission for IPEC added to the price. In due time, the machine was shipped, MRF sent payment to IPEC, and IPEC remitted to Soberay only a little more than half of the money. Apparently IPEC pocketed the remainder of the money, and is now in bankruptcy.

Thus, we have a classic commercial conundrum. A deal has gone sour due to the defalcation of a party involved in the deal. Who is to bear the loss? Soberay has been grossly underpaid for a very valuable machine. MRF has already paid once for the machine, and, understandably, does not wish to do so again. The solution to this conflict should lie in the question of the relationship between IPEC and MRF. Ohio law on this question seems to be quite clear. In a case adverted to by the court only in passing, *James G. Smith & Assoc., Inc. v. Everett,* 1 Ohio App.3d 118, 439 N.E.2d 932 (Ohio App.1981), the Ohio Court of Appeals carefully laid out three possible types of principal-agent relationships:

> 1) A "disclosed principal," where both the existence of the agency and the identity of the principal are known;

2) A "partially disclosed principal," where the existence of the agency is known, but the identity of the principal is not; and

3) An "undisclosed principal," where neither the existence of an agency nor the identity of the principal is known.

*See id.* at 935.

The exegesis in the opinion might make sense if this were a case of the third category, where Soberay thought it was dealing solely with IPEC, or if IPEC's relationship to MRF was as a true reseller, with the purchase being made by IPEC for its own account. However, the jury specifically found, and the facts of the case amply support the finding, that IPEC "was the agent of MRF in the sale ... from Soberay and that MRF gave [IPEC] the authority to act as MRF's agent and to enter into a contract with Soberay on MRF's behalf...."

Under these circumstances, it is impossible to reach any conclusion other than that this case involves a situation of the first class, with MRF serving as the "disclosed principal." The Ohio Court of Appeals in *Everett* went on to state, 439 N.E.2d at 935, the legal result of this categorization: "An agent who acts for a disclosed principal and who acts within the scope of his authority and in name of the principal is ordinarily not liable on the contracts he makes." The rationale for this rule is that, in this situation, the third party intends to deal with the principal, not his agent. The only possible qualification in this language is the phrase "and in the name of the principal." Here, IPEC is the name on the invoices (not an integrated contract) but, as both found by the jury and admitted by MRF (*see, e.g.,* appellee's brief at 29: "Soberay Machine, believing that IPEC was MRF's agent"), Soberay knew that IPEC was acting for MRF.

In fact, *Everett* explains, at 935, that there is no situation such as is contended

here, where only the agent and not the principal is liable.[1] This could only be the case if the purported agent was not in fact truly an agent, but was acting for its own account, and this outcome is strictly negated by the jury finding. Once the jury had made this determination, judgment should have been rendered for Soberay as a matter of law.

Instead, the court gave a second interrogatory. This one asked whether IPEC was acting within the scope of its agency when it pocketed over $100,000 of MRF's payment rather than turning it over to Soberay. In other words, it asked whether IPEC stole the money on its own behalf, or on behalf of MRF. Under Ohio law as noted above, this question was irrelevant. As the Ohio Supreme Court said more than a century ago, "where one of two parties must suffer loss by the reason of the fraud of an unfaithful agent, it must be the company that [has accredited him]".... *Massachusetts Life Ins. Co. v. Eshelman,* 30 Ohio St. 647, 659 (Ohio 1876). As recently as 1986, the Ohio Court of Appeals held that the principal is responsible for all *obligations* incurred by the agent within the scope of the agency, including a loss in connection with the obligation caused by the agent's fraud, regardless of whether the principal authorized or benefitted from the agent's fraud. *See, e.g., DeSantis v. Smedley,* 34 Ohio App.3d 218, 220–21, 517 N.E.2d 1038 (1986). That is exactly what happened here.

Now that the facts and state law contract issues are set forth clearly, we can turn to the impact of Rule 19. In short, since IPEC is in no way indispensable to the key question in the litigation, the liability of MRF to Soberay for payments Soberay has not received, there is nothing in Rule 19 that should have prevented what actually happened, the trial and jury deter-

---

**1.** The court's reliance on *Ohio State Univ. Hosps. v. Evans,* at pages 15–16, is irrelevant. *Evans* only stands for the proposition that

sometimes an agent of a disclosed principal may *also* be held liable. It certainly does *not* hold the principal is not liable, as well.

mination of this suit. The fact that a party that is liable may have options to attempt to recover some of its liability from a third party made does not make that third party indispensable. In fact, it is clear that "complete relief" means the relief sought by the plaintiff and to which the plaintiff is entitled. Section 2(ii) of Rule 19(a) does not apply based on making MRF liable for obligations "by reason of the claimed interest" (of IPEC). The key statement in the court's opinion, at page 11, that "IPEC was not employed by defendant, [and] acted independently in entering into the contract with plaintiff" is simply belied by both the state of the record and the jury verdict. Thus, under the clear state of Ohio law, and based on the fully supported factual finding of the jury in answer to interrogatory no. 1, the judgment of the district court should be reversed and the matter remanded to the district court with instructions to enter judgment for Soberay in the full amount of its claim.