**HINTE, Appellant,**

**v.**

**ECHO, INC., Appellee.**

[Cite as *Hinte v. Echo, Inc.* (1998), 130 Ohio App.3d 678.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–105.

Decided Dec. 10, 1998.

680

*Leeseberg, Maloon, Schulman & Valentine, Gerald S. Leeseberg* and *Geoffrey M. Wardle,* for appellant.

*Hohmann, Boukis & Brunn* and *Thomas L. Brunn, Sr.,* for appellee.

DESHLER, Presiding Judge.

Plaintiff-appellant, Joseph Hinte, appeals from a judgment of the Franklin County Court of Common Pleas entered pursuant to a jury verdict in favor of defendant-appellee, Echo, Inc., in appellant's product liability action.

Appellant was employed by Klamfoth Landscaping Company when he was injured on April 22, 1994, when using an Echo brush cutter to remove saplings on a job site. The Echo brush cutter was described as a standard weed trimmer with a ten-inch circular saw blade substituted for the nylon cutting line. As appellant demonstrated to two other employees the proper use of the brush cutter, the ten-inch circular saw blade of the brush cutter fractured into several pieces. Fragments of the broken blade were thrown into appellant's right knee, damaging the patellar tendon, the lateral and medial meniscus, and the bones of the knee, and, most seriously, severing the anterior cruciate ligament. The initial surgery failed to completely correct the damage to his knee, and appellant underwent a second operation to reconstruct the severed ligament.

Appellant brought his product liability suit against Echo on June 5, 1995, asserting that the defective brush-cutting blade was the proximate cause of his injuries. Shortly before the trial date, Echo sought to identify a new witness after the deadline had passed under the case-scheduling order. Echo identified Jonathan Salvatini as a replacement witness for another Echo employee, Ken Anderson, who would be unavailable. Anderson had previously been identified by Echo and deposed by appellant. The court denied appellant's motion to exclude the testimony of Salvatini, based upon Echo's assertion that Salvatini's testimony would not differ materially from the contemplated testimony to be offered by Anderson. Salvatini was accordingly deposed by appellant on the eve of trial.

The matter proceeded to trial on September 29, 1997, with Echo's defense predicated on the assertion that the fractured brush-cutting blade had not been manufactured or sold by Echo.

Seeking to establish the fractured blade as an Echo product, appellant presented the testimony of his employer, Scott Klamfoth. Klamfoth testified that he used only Echo landscaping and lawn care equipment to the exclusion of all other brands, because of his desire to simplify parts stocking and repair procedures in his business. By purchasing only Echo equipment, Klamfoth was able to avoid carrying parts from multiple vendors for the various types of equipment used by his employees. Klamfoth testified that he had never purchased brush-cutting blades from any manufacturer other than Echo. He specifically testified that he had purchased the blade in question as part of a optional brush blade kit to go with the Echo weed trimmer. The kit was packaged and sold under the Echo name. On cross-examination, Klamfoth conceded that the broken blade, which was introduced as an exhibit, then bore no distinguishing stamps or stenciling identifying it as an Echo blade, in contrast to new Echo blades introduced for comparison.

Appellant also testified personally on this issue that he had never seen brush-cutting blades from any other manufacturer in Klamfoth's shop or known Klamfoth to purchase blades from another manufacturer. He recalled seeing optional brush blade kits as described by Klamfoth, purchased in a bag with all components labeled in Echo packaging.

Appellee presented the testimony of Karl Amrein as an engineering expert. Amrein had two engineering degrees and extensive experience as an engineer in the businesses of power tools and lawn and garden products. Amrein testified that he had been given documents representing the engineering specifications for Echo brush-cutting blades, and that the fractured blade differed in two respects from those engineering specifications. The fractured blade was 0.045 inch thick, rather than 0.055 inch as called for in the Echo blade specifications, and the

fractured blade had somewhat less tooth offset than that specified in the Echo drawings. The blades also differed somewhat in the identifying stampings on the body of the blade, although both were stamped SKS–5, a Japanese steel identification code. Amrein testified upon cross-examination that the sole basis for his expert opinion that the fractured blade was not one manufactured by Echo was that it did not conform with the Echo engineering drawings that he had been given.

At the outset of Amrein's testimony, when he first referred to the Echo engineering drawings, appellant objected to use of the drawings as a basis for Amrein's expert testimony because the drawings had not been admitted into evidence and no proper foundation had been laid. Counsel for appellee asserted that the documents had been stipulated, which counsel for appellant denied. The court found that Amrein could refer to the engineering drawings and specifications, and that Echo could authenticate and proffer them for admission at a later time.

Appellee also presented the testimony of Jonathan Salvatini, the manager of product integrity for Echo. With respect to the issues upon appeal, the crux of Salvatini's testimony was that in his experience, Echo did not package its brush-cutting blades as part of an optional brush-cutting kit for weed trimmers. Salvatini was also asked to identify appellee's Exhibit A, the Echo engineering drawings, and stated that he had obtained the engineering specifications a few weeks before, in preparation for the trial. He also stated that he was not an engineer and could not formulate an opinion as to whether or not the blade in question, based upon the engineering specifications and physical appearance, had been manufactured and sold by Echo.

At the close of evidence, appellant renewed his motion to strike all aspects of the testimony of Amrein and Salvatini that had been premised upon the use of the engineering specifications, because no foundation had been laid to permit their admission under the business-records exception to the hearsay rule. The court overruled the motion on the basis that the documents had previously been provided in connection with a prior motion for summary judgment, and that appellant had adequate time to prepare to rebut this evidence. Appellant also moved for a finding that the blade was defective as a matter of law, based upon testimony to that effect by Amrein. Counsel for appellee did not oppose this motion. The trial court accordingly ruled that the blade was defective as a matter of law.

Exhibits were then admitted without objection other than to the Echo engineering specifications, the trial court overruled a motion for directed verdict on behalf of Echo, and the matter went to the jury after closing arguments. The jury then returned its verdict in favor of Echo. Subsequent motions for a

judgment notwithstanding the verdict or for a new trial were overruled by the trial court, and appellant has timely appealed, bringing the following two assignments of error:

"1.   The trial court erred in admitting into evidence engineering specifications that failed to comply with Evid.R. 803(6) and for which no foundation had been established that would allow for their admission in compliance with Evid.R. 803(6).

"2.   The trial court erred when it denied the motions to exclude and motions to strike the testimony of witnesses who either lacked the requisite knowledge and competence to testify or impermissibly offered testimony based upon hearsay."

Appellant's first assignment of error asserts that the trial court erred in admitting appellee's Exhibit A, the blade engineering specifications, without a foundation being laid pursuant to Evid.R. 803(6).   Appellant's second assignment of error asserts that the trial court erred in permitting appellee's witnesses to testify based upon the improperly admitted engineering specifications.   While appellant's second assignment of error raises other issues with respect to the competence of witnesses to testify, those aspects of the second assignment of error that relate to the admission of engineering specifications will be discussed in connection with appellant's first assignment of error.

Three issues are raised in connection with admission into evidence of Echo's engineering specifications.   The first is whether a proper foundation was laid for the admission of the engineering specifications, the second is whether appellant had previously stipulated to admission of the engineering specifications, and the third is whether appellant was prejudiced by the admission of the specifications, if they were improperly admitted.

Evid.R. 803(6) addresses the admissibility of business records as an exception to the general hearsay rule:

"**Records of regularly conducted activity.**   A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

The decision to admit a business record into evidence pursuant to Evid. R. 803(6) rests within the sound discretion of the trial court, whose determination will not be disturbed on appeal unless an abuse of discretion can be shown. *WUPW TV–36 v. Direct Results Marketing, Inc.* (1990), 70 Ohio App.3d 710, 714,

591 N.E.2d 1345, 1347. Admission of business records will constitute an abuse of discretion by the trial court where an inadequate foundation was laid to establish the admissibility of the records under Evid.R. 803(6). *State v. Comstock* (Aug. 29, 1997), Ashtabula App. No. 96–A–0058, unreported, 1997 WL 531304.

Evid.R. 803(6) does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document. The witness must, however, "demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business." *Keeva J. Kekst Architects, Inc. v. George Dev. Group* (May 15, 1997), Cuyahoga App. No. 70835, unreported, at 12, 1997 WL 253171, citing *WUPW TV–36, supra.*

The Ohio Supreme Court has stated that the business-records exception "is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy." *Weis v. Weis* (1947), 147 Ohio St. 416, 425–426, 34 O.O. 350, 354, 72 N.E.2d 245, 250. In laying a foundation, the Ohio Supreme Court in *State v. Davis* (1991), 62 Ohio St.3d 326, 342, 581 N.E.2d 1362, 1377, held, "the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document."

In the present case, we find that the testimony of appellee's witness and employee, Jonathan Salvatini, was insufficient to authenticate the Echo blade specifications for purposes of admission into evidence under Evid.R. 803(6). Salvatini was, at best, only able to testify that the documents came to him "in the normal and usual course of business" a few weeks before trial. Salvatini later testified that the documents had not, in fact, come to him in the normal and usual course of business, but rather as part of his preparation for trial. Salvatini testified that he was not an engineer, and he offered no testimony regarding the circumstances of formulation and creation of the engineering specifications, who was responsible for the drawings, and what their application, if any, had been to the production process. Salvatini's testimony did not establish that these were the only engineering specifications for Echo brush-cutting blades, or whether they were controlling during the interval in which Echo might have produced blades that would have been purchased under the circumstances outlined by Klamfoth in his testimony for appellant. "A person who has no personal knowledge of the source of the records sought to be entered into evidence is not

qualified to identify the records for purposes of having the records admitted." *State v. O'Neill* (Mar. 24, 1992), Franklin App. No. 91AP–369, unreported, 1992 WL 63308.

■ We accordingly find that the trial court abused its discretion in admitting the Echo blade specifications because the absence of a proper foundation rendered the documents inadmissible under Evid.R. 803(6), and the lack of specificity with respect to date, scope, and application of the engineering specifications to the blade production process deprived the engineering specifications of the required relevance for admissibility.

■ We now turn to appellee's contention that, regardless of their admissibility under the Rules of Evidence, appellant had previously stipulated to admission of the engineering specifications. When appellant first objected to admission of the engineering specifications after Amrein's testimony, it was on the basis that Amrein was an expert hired for trial purposes and not an Echo employee and that he could not authenticate the Echo engineering specifications. Additionally, appellant argued that Amrein was relying upon the engineering specifications prior to their having been authenticated and admitted pursuant to another appropriate witness's testimony. The following exchange then occurred on the record:

"MR. BRUNN: Your Honor, about a week or two ago I prepared—well, first of all, Mr. Leeseberg was furnished with about almost one half of this drawing through discovery requests, drawing of the blade was given to him, he did not request the legend which was not. That's all over the record from my motion for summary judgment. It's been discussed here, there, everywhere, also in the deposition taken previously of Mr. Amrein.

"Next, I prepared a Defendant's exhibit list which I submitted to opposing counsel at the deposition of Dr. Wroble, and he at that time asked me if I would stipulate to all of his medical records, et cetera, which I agreed to do, and I said, would you stipulate to my exhibit list, which he agreed to do at that time.

"MR. LEESEBERG: No, I did not. I stipulated—

"MR. BRUNN: That's what you said to me.

"MR. LEESEBERG: The stipulation, Tom, which is not in writing, was as a matter of professional courtesy to both of us, that we would both stipulate to anything that had previously been exchanged and reviewed by counsel. And you said well, I don't have the medical records of Dr. Wroble, and—

"MR. BRUNN: I didn't.

"MR. LEESEBERG:—upon review of your records, you determined you did have them.

"MR. BRUNN: No, I never had those records.

"MR. LEESEBERG: That was the stipulation, was that exhibits would be stipulated to to the extent that they had been previously exchanged."

The court later noted that the stipulation between the parties regarding evidence, if any, had not been entered on the record: "I don't know about any stipulation, if you have got some stipulation by and between you." From the transcript, it is clear that, while there may have been some misunderstanding between counsel on this point, counsel for appellant never considered the engineering specifications to have been stipulated to and in fact, counsel objected to their admission at every relevant point in the trial process. Counsel then reiterated his objections in his motion for a new trial after the jury verdict. Under these circumstances, we cannot find that the engineering specifications were properly admitted pursuant to the purported stipulation between the parties, the existence of which counsel for appellant vehemently denied from the outset.

We now turn to the issue of whether the erroneous admission of the Echo blade engineering specifications had a prejudicial effect on the outcome of the trial. Under cross-examination, Amrein responded to the following question: "The whole basis for your opinion that this is not an Echo blade is that it does not comply with Echo's engineering drawings?" His answer was "Correct." In the absence of the Echo engineering specifications, therefore, Amrein's testimony must be entirely subtracted from the balance of the evidence that the jury had available to it in reaching its verdict in favor of appellee. Likewise any testimony by Salvatini based on the engineering specifications must be discounted. The evidence remaining before the jury, then, would have consisted on the one hand of Klamfoth's assertion that he always purchased Echo equipment and blades and had purchased the blade in question as part of an Echo brush-cutting accessory kit, and, on the other hand, Salvatini's assertion that Echo had never sold such a kit that included a brush-cutting blade. It is apparent that Amrein's conclusions based upon the engineering specifications would have been of great weight in tipping the balance of the above irreconcilable assertions by witnesses for the opposing parties. We therefore conclude that the improper admission of the engineering specifications under Evid.R. 803(6) was prejudicial to appellant.

Based upon the foregoing, appellant's first assignment of error is sustained because the trial court improperly admitted the Echo blade engineering specifications without a proper foundation having been laid pursuant to Evid.R. 803(6). Appellant's second assignment of error is sustained to the extent that the testimony of appellee's two witnesses, Amrein and Salvatini, was inadmissible to the extent that it relied upon the improperly admitted engineering specifications. Further arguments made by appellant under his second assignment of error

regarding the competence of Salvatini to testify and the propriety of the trial court allowing him to testify in substitution for a previously declared witness are rendered moot by our conclusions with respect to the admission of the engineering specifications.

In conclusion, appellant's first assignment of error is sustained, and appellant's second assignment of error is sustained in part and mooted in part. The judgment of the Franklin County Court of Common Pleas in favor of appellee is reversed, and the matter remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

PETREE and BOWMAN, JJ., concur.