DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court summary judgment entered in favor of Motorist Insurance Companies (Motorist), plaintiff below and appellee/cross-appellant herein. Charles Shields, Sr. and Margaret M. Shields, defendants below and appellants/cross-appellees (appellants) herein, raise the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR: "THE TRIAL COURT [ERRED] WHEN IT HELD THE SHIELDS HAD NOT EXPRESSLY RAISED THE STATUTE OF LIMITATIONS AS A DEFENSE AS THEY PLEADED FAILURE TO STATE A CLAIM AND LACHES IN ANSWERS TO THE COMPLAINT."
 SECOND ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED BY FAILING TO IMPANEL A JURY TO DECIDE THE DISPUTED QUESTIONS OF FACT ASSOCIATED WITH PLAINTIFF'S EVIDENCE OF THE REASONABLENESS AND NECESSITY OF ITS CLAIMED ATTORNEY FEES."
 THIRD ASSIGNMENT OF ERROR: "THE TRIAL JUDGE ERRED BY RELYING ON HEARSAY AND IMPROPER AFFIDAVIT EVIDENCE TO RENDER ITS JUDGMENT."
 FOURTH ASSIGNMENT OF ERROR: "THE TRIAL JUDGE ERRED BY GRANTING SUMMARY JUDGMENT TO MOTORISTS AS IT HAD NO GREATER RIGHT TO RECOVER AGAINST SHIELDS THAN GRANGE DID AGAINST THE TORTFEASOR."
 FIFTH ASSIGNMENT OF ERROR: "THE TRIAL JUDGE ERRED BY AWARDING ATTORNEY FEES AS THE RELEASE AGREEMENT DID NOT CONTEMPLATE FEES INCURRED TO OFFENSIVELY SUE THE TORTFEASOR'S VICTIM."
Appellee (and cross-appellant) raises the following assignment of error:
 "THE TRIAL COURT ERRED IN FAILING TO CALCULATE APPELLEE/CROSS-CLAIMANT'S ATTORNEY FEES AND COSTS IN ACCORDANCE WITH THE STANDARDS ESTABLISHED BY THE SUPREME COURT OF OHIO IN BITTNER V. TRI-COUNTY TOYOTA, INC. (1991), 58 OHIO ST.3d 143."
Our review of the record reveals the following facts pertinent to the instant appeal. Mrs. Shields was involved in an automobile accident. At the time of the accident, Grange Mutual Casualty Company (Grange) insured appellants. Grange paid appellants $5,000 under its med pay coverage.
Appellants' insurance policy gave Grange a right of subrogation. The insurance policy's subrogation provision provides:
Our Right to Recover Payment
 A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
* * *
 B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment.
Appellants subsequently received $105,000 pursuant to a settlement with Motorist, the tortfeasor's insurer. As part of their settlement with Motorist, appellants executed a release and indemnity agreement. The agreement provides in relevant part as follows:
 "[Appellants] * * * agree to hold harmless and indemnify Releasees from and against any loss, claim, liability, cost or expense (including attorney fees) arising out of any claim against Releasees for subrogation, indemnification, contribution, or any cause whatsoever * * *."
After Motorist had settled with appellants, appellants refused to reimburse Grange. Grange, therefore, looked to Motorist for reimbursement. Motorist reimbursed the $5,000 Grange had paid appellants pursuant to appellants' insurance policy.
On July 18, 1997, Motorist filed a complaint against appellants which alleged that appellants, pursuant to the release and indemnity agreement, are obligated to indemnify Motorist in the amount of $5,000 plus attorney fees. Appellants denied liability and asserted that the doctrine of laches barred Motorist's claim.
On August 13, 1998, Motorist filed a motion for summary judgment. Motorist alleged that under the terms of the release and indemnity agreement, appellants are obligated to indemnify Motorist in the amount of $5,000 plus attorney fees.
On September 22, 1998, appellants filed a memorandum in opposition to Motorist's summary judgment motion. Appellants argued that they did not have any knowledge of a duty to reimburse Grange. Appellants claimed that the purported subrogation clause in Grange's insurance policy was unclear and did not give them notice that they had any obligation to reimburse Grange for sums received from the tortfeasor's insurer.
On July 15, 1999, appellants filed a "supplemental memorandum in opposition to [appellee's] motion for summary judgment." Appellants argued that the statute of limitations barred Motorist's claim.
The trial court, on October 25, 1999, entered summary judgment in Motorist's favor, finding that "by virtue of the terms of [appellants] policy with Grange Insurance and the terms of [appellants'] release and indemnity agreement with [Motorist] and others, [appellants] are liable to [Motorist] in the sum of $5,000.00. Liability herein is a matter of law, and is unclouded by any genuine issues of material fact." The trial court further concluded that appellants had waived the statute of limitations issue. The court noted that it had limited the post summary judgment hearing briefs to the issue regarding what, under an insurance contract, constitutes sufficient notice of the insurer's subrogation rights. The court also found that the statute of limitations is an affirmative defense that must be pleaded and that appellants had failed to raise the defense in an appropriate pleading.
On April 27, 2000, the trial court awarded Motorist attorney fees in the amount of $1,500. The court stated:
 "The Court believes there is a basis for the assessment of legal fees. The actions of the Defendants required the Plaintiff to employ an expert to assess attorney fees and their unwillingness to consider a stipulation as to some sort of reasonable allocation necessitated further hearings. The court is also of the opinion that it would be unjust to assess four to five thousand dollars in attorney fees and expenses."
Appellants filed a timely notice of appeal.[1]
 I
In their first assignment of error, appellants argue that the trial court erred by determining that appellants had not properly raised the statute of limitation defense and that appellants had therefore waived the defense. Appellants note that their pleading raised the affirmative defenses of failure to state a claim and of laches. Appellants assert that these two affirmative defenses sufficiently raised the statute of limitations affirmative defense. We disagree with appellants.
Civ.R. 8(C) governs the pleading of affirmative defenses. The rule provides in relevant part as follows: "In pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of limitations * * * and any other matter constituting an avoidance or affirmative defense." A party waives the affirmative defense of the expiration of the statute of limitations unless the party properly raises the defense. Civ.R. 12(H); State ex rel. Tubbs Jones v. Suster (1998),84 Ohio St.3d 70, 75, 701 N.E.2d 1002, 1007; Mills v. Whitehouse TruckingCo. (1974), 40 Ohio St.2d 55, 320 N.E.2d 668; Spence v. Liberty Twp.Trustees (1996), 109 Ohio App.3d 357, 362, 672 N.E.2d 213, 216. InSpence, we stated:
 "* * * [T]here are only three ways by which to properly raise an affirmative defense. These include (1) setting forth the defense in a pre-pleading motion pursuant to Civ.R. 12(B), or (2) affirmatively setting forth the defense in a responsive pleading pursuant to Civ.R. 8(C), or (3) amending one's responsive pleading pursuant to Civ.R. 15 so as to include such defense. A failure to raise an affirmative defense by any of these three methods will result in a waiver of that defense."
An affirmative defense is not properly raised during summary judgment proceedings. Mossa v. Western Credit Union, Inc. (1992), 84 Ohio App.3d 177,616 N.E.2d 571 (stating that asserting an affirmative defense in a summary judgment motion does not properly raise the defense); Neitz v.Village of Lakemore (Nov. 15, 2000), Summit App. No. 19730, unreported (stating that asserting an affirmative defense in a memorandum in opposition to summary judgment is not the proper vehicle by which to raise the defense). Rather, the party must raise the defense in a motion filed prior to answering a pleading, in a responsive pleading, or in an amendment to the responsive pleading. See, e.g., Spence. Failure to do so results in a waiver of the defense. See, e.g., Civ.R. 12(H); Spence.
In the case at bar, appellants first attempted to raise the statute of limitations defense in a brief filed after the trial court had conducted a hearing on the summary judgment motion. Raising an affirmative defense during summary judgment proceedings is not the proper method by which to raise such defense. See Mossa; Neitz. Furthermore, the record does not indicate that appellants amended their answer to include the statute of limitations defense or that appellants moved the court for leave to amend their answer to include the statute of limitation defense. Consequently, we agree with the trial court's conclusion in the case sub judice that appellants waived the statute of limitations defense.
Accordingly, based upon the foregoing reasons we overrule appellants' first assignment of error.
 II
In their second assignment of error, appellants contend that the trial court erred by awarding appellee attorney fees without submitting the matter to a jury. Appellants apparently contend that the release and indemnity agreement that explicitly provided for the indemnification of attorney fees did not override appellants right to a jury trial. We disagree with appellants.
Generally, a prevailing party may not recover attorney fees from the unsuccessful party. See, e.g., Nottingdale Homeowners' Assn. v. Darby
(1987) 33 Ohio St.3d 32, 514 N.E.2d 702; Worth v. Aetna Cas. Sur. Co.
(1987), 32 Ohio St.3d 238, 513 N.E.2d 253. The parties to a contract may, however, enter into an agreement that provides for the recovery of attorney fees in the event of a dispute requiring legal intervention.Nottingdale; see, also, Fleischmann Distilling Corp. v. Maier BrewingCo. (1967), 386 U.S. 714, 717; Restatement of the Law 2d, Contracts (1981) 160, Section 356, comment d (stating that "[a]lthough attorneys' fees are not generally awarded to the winning party, if the parties provide for the award of such fees the court will award a sum that it considers to be reasonable").
In upholding a contract provision providing for the recovery of attorney fees, the Nottingdale court explained:
 "It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom `is fundamental to our society as the right to write and to speak without restraint.' Blount v. Smith (1967), 12 Ohio St.2d 41, 47, 231 N.E.2d 301, 305. Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts."
Id., 33 Ohio St.3d at 36, 514 N.E.2d at 705-06. Thus, in Nottingdale, the court concluded that "two parties, in a noncommercial transaction, may lawfully contract to require, in a suit between them, the payment by the unsuccessful party of the prevailing party's attorney fees." Id.,33 Ohio St.3d at 33, 514 N.E.2d at 704; see, also, Worth at syllabus.
Contractual attorney fee provisions are unenforceable, however, in the following situations: (1) when the parties do not share an equal bargaining position; (2) when the terms of the provision are not freely negotiable; (3) when the attorney fee provision promotes litigation or illegal acts; or (4) when the attorney fee provision acts as a penalty. See First Capital Corp. v. G J Industries, Inc. (1999),131 Ohio App.3d 106, 721 N.E.2d 1084; STA Realty, Inc. v. SpecialtyRestaurants Corp. (Aug. 31, 2000), Cuyahoga App. No. 76729, unreported. In contrast, a contractual attorney fee provision will be enforceable when: (1) the contract is entered into in a non-commercial setting; (2) when the parties share an equal bargaining position; (3) when the parties are of similar sophistication; (4) when the provision has been freely negotiated; and (5) when both parties had the opportunity to have counsel review the provision. First Capital; STA Realty.
Moreover, the Ohio Supreme Court has explicitly recognized that "[a]n indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable." Worth at syllabus. The court explained: "[T]he indemnitor's alleged wrongful refusal to honor its obligations caused the indemnitee to incur legal expenses in order to vindicate its right to indemnity." Id., 32 Ohio St.3d at 242,513 N.E.2d at 257.
In determining whether an indemnity agreement provides for the indemnification of attorney fees, courts must examine the language used in the agreement. Id., 32 Ohio St.3d at 240, 513 N.E.2d at 256.
 "All words used must be taken in their ordinary and popular sense * * * and `[w]hen a * * * [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which * * * [it] naturally presents."
Id., 32 Ohio St.3d at 240-41, 513 N.E.2d at 256 (citations omitted) (alterations in original). In Brzezinski v. Feuerwerker (Sept. 14, 2000), Cuyahoga App. No. 74288, unreported, the court found the following language in an indemnity clause sufficiently broad to permit a recovery of attorney fees:
 "Builder agrees to indemnify, defend and hold the owner harmless from and against any and all claims, damages, losses, liabilities, and expenses, including attorneys' fees and court costs, directly or indirectly, arising out of, relating to, or resulting from the performance of the Work * * *."
Looking to the indemnity agreement in the case sub judice, the agreement, like the agreement in Brzezinski, is sufficiently broad to permit Motorist to recover attorney fees from appellants. The attorney fee provision provides as follows:
 "[Appellants] * * * agree to hold harmless and indemnify Releasees from and against any loss, claim, liability, cost or expense (including attorney fees) arising out of any claim against Releasees for subrogation, indemnification, contribution, or any cause whatsoever * * *."
Motorist incurred legal expenses while pursuing its right of indemnification for the money paid to Grange in satisfaction of Grange's right of subrogation. Thus, Motorist's attorney fee arose out of a claim for "subrogation, indemnification, [or] contribution." Consequently, pursuant to the plain meaning of the parties' agreement, Motorist is entitled to attorney fees.
Additionally, we agree with the trial court that the attorney fee provision is enforceable. The parties each had the opportunity to have counsel review the indemnity agreement and each had the opportunity to negotiate its terms. Consequently, because the indemnity agreement specifically provided for the recovery of attorney fees, the trial court properly determined that empaneling a jury to determine Motorist's entitlement to attorney fees was unnecessary.[2]
Accordingly, based upon the foregoing reasons, we overrule appellants' second assignment of error.
 III
In their third assignment of error, appellants argue that the trial court erred by permitting Motorist to present unauthenticated business records. Appellants assert that the records were not properly admitted due to the failure of the custodian of the records to authenticate the records. We disagree with appellants.
Evid.R. 803(6) addresses the admissibility of business records as an exception to the general hearsay rule:
 Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
The decision to admit business records pursuant to Evid.R. 803(6) rests within the discretion of the trial court. Peters v. Ohio State LotteryCommission (1992), 63 Ohio St.3d 296, 587 N.E.2d 290; see, also, WUPWTV-36 v. Direct Results Marketing, Inc. (1990), 70 Ohio App.3d 710, 714,591 N.E.2d 1345 (stating that the decision to admit a business record into evidence pursuant to Evid.R. 803(6) rests within the sound discretion of the trial court, whose determination will not be disturbed on appeal unless an abuse of discretion can be shown). The trial court abuses its discretion in admitting business records when the proponent of the evidence fails to frame an adequate foundation to establish the admissibility of the records. Hinte v. Echo (1998), 130 Ohio App.3d 678,720 N.E.2d 994, discretionary appeal disallowed (1999), 85 Ohio St.3d 1460,708 N.E.2d 1013; State v. Comstock (Aug. 15, 1997), Ashtabula App. No. 96-A-0058, unreported.
In discussing the foundation requirement, the court in Hinte explained as follows:
 "Evid.R. 803(6) does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document. The witness must, however, `demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business.' Keeva J. Kekst Architects, Inc. v. George Dev. Group (May 15, 1997), Cuyahoga App. No. 70835, unreported, citing WUPW TV-36, supra.
 The Ohio Supreme Court has stated that the business record exception `is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy.' Weis v. Weis
(1947), 147 Ohio St. 416, 425-426, 72 N.E.2d 245. In laying a foundation, the Ohio Supreme Court in State v. Davis (1991), 62 Ohio St.3d 326, 342, 581 N.E.2d 1362, held that `the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document.'"
Id., 130 Ohio App.3d at 683-84, 720 N.E.2d at 997-98; see, also, Statev. Hirsch (1998), 129 Ohio App.3d 294, 717 N.E.2d 789. Moreover, "[w]hile the witness need not have personal knowledge of the creation of the particular record in question, * * * he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business." Davis, 62 Ohio St.3d at 342,581 N.E.2d at 1377.
In the case at bar, we find that the trial court did not abuse its discretion by admitting into evidence the business records. A review of the record reveals that Motorist laid a sufficient foundation for the admission of the evidence. Attorney Sloan, the witness introducing the business records, testified that he oversees and personally reviews the work and the billing of other attorneys who perform work for appellee. Attorney Sloan further testified that the firm's standard business practice is to enter a billing entry shortly after the work is completed. Thus, Attorney Sloan expressed sufficient familiarity with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he reasonably could testify on the basis of his knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6). Moreover, Attorney Sloan, from personal knowledge of the record-keeping system, vouched that the billing records were kept in the regular course of business. See Davis, supra.
Accordingly, based upon the foregoing reasons we overrule appellants' third assignment of error.
 IV
In their fourth assignment of error, appellants argue that the trial court erred by granting summary judgment in Motorist's favor. Appellants contend that Motorist's rights are no greater than Grange's, and that because Grange's action against the tortfeasor is time-barred, so is Motorist's claim against appellants. In essence, appellants reassert their argument relating to the expiration of the statute of limitations.
As we discussed under appellants' first assignment of error, however, appellants have waived the statute of limitations defense. Thus, we find that appellants' fourth assignment of error is without merit.
Accordingly, based upon the foregoing reasons we overrule appellants' fourth assignment of error.
 V
In their fifth assignment of error, appellants contend that the trial court erred by construing the release agreement as providing for Motorist to recover attorney fees from appellants. We disagree with appellants.
As we discussed under appellants' second assignment of error, the release and indemnification agreement provides for the recovery of attorney fees.
Accordingly, we overrule appellants' fifth assignment of error.
 VI
In its cross-assignment of error, Motorist asserts that the trial court failed to properly calculate the amount of attorney fees to which Motorist was entitled. We disagree.
A reviewing court will not reverse a trial court's decision regarding attorney fees absent a showing that the court abused its discretion. As the court explained in Bittner v. Tri-County Toyota, Inc. (1991),58 Ohio St.3d 143, 146, 569 N.E.2d 464, 467:
 "It is well settled that where a court is empowered to award attorney fees * * *, the amount of such fee is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge [who] participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court."
In Bittner,[3] the Ohio Supreme Court discussed the computation of attorney fees as follows:
 "When awarding reasonable attorney fees * * * the trial court should first calculate the number of hours reasonably expended on the case time and hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation."
Id., 58 Ohio St.3d at 145-46, 569 N.E.2d at 467. Moreover, a trial court must state the basis for its fee determination. "Absent such a statement, it is not possible for an appellate court to conduct a meaningful review." Id., 58 Ohio St.3d at 146, 569 N.E.2d at 467.
In the case at bar, we do not believe that the trial court abused its discretion in awarding appellee attorney fees in the amount of $1,500. The record reveals that the trial court considered the relevant factors and concluded that an award of $1,500 was reasonable and just. The trial court specifically found that the amount of the award appellee requested, between $4,000 and $5,000 would be unjust.
Accordingly, based upon the foregoing reasons we overrule Motorist's cross-assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, P.J., Kline, J. Evans, J.: Concur in Judgment Opinion
 ___________________________ Peter B. Abele, Presiding Judge
 ___________________________ Roger L. Kline, Judge
 ___________________________ David T. Evans, Judge
[1] Appellants originally filed a notice of appeal on November 29, 1999. The trial court's October 25, 1999 order, however, did not constitute a final appealable order because the order did not dispose of the claim for attorney fees. The trial court's judgment became final on April 27, 2000, when it entered judgment on appellee's request for attorney fees. Appellants filed a notice of appeal on May 26, 2000.
[2] We recognize that in Digital Analog Design Corp. v. N. SupplyCo. (1992), 63 Ohio St.3d 657, 590 N.E.2d 737, paragraph three of the syllabus, the court held: "[A] trial court must submit to a jury the issue of whether attorney fees should be awarded in a tort action. The amount of those fees, however, shall be determined by the trial judge, who may, in his or her discretion, submit the question of the amount of the fees to the jury." (Emphasis added.) We do not believe that Digital
applies to the case at bar. Rather, the relevant authorities areNottingdale and Worth.
[3] Although Bittner involved a statutory attorney fee award under the Consumer Sales Practices Act, other courts have applied Bittner's analysis in cases addressing the reasonableness of attorney fee awards in situations that did not concern the Consumer Sales Practices Act. See,e.g., Freeman v. Crown City Mining, Inc. (1993), 90 Ohio App.3d 546, 553
n. 2, 630 N.E.2d 19, 24 (citing Gerhardt v. Mid Am. Mtge. Corp. (Mar. 5, 1993), Pickaway App. No. 92CA14, unreported; Suiter v. Walker (July 21, 1992), Lawrence App. No. 91CA13, unreported; Day v. Day (May 14, 1991), Franklin App. No. 90AP-745, unreported).